UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| **WILLIS A. GLANTON,** | ) | Case No. B-1082315 C-13D |
| **KATHY H. GLANTON,** | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |

## TRUSTEE'S MEMORANDUM OF LAW IN SUPPORT OF OBJECTION TO CONFIRMATION OF PLAN

**I.      STATEMENT OF THE FACTS**

The Debtors filed for relief under Chapter 13 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of North Carolina ("the Court") on December 29, 2010 ("the Petition Date"). The Debtors have proposed a plan with payments of $193.00 per month for a period of at least 36 months. The Debtors have proposed no dividend to general unsecured creditors, to whom they owe approximately $147,778.87 according to Schedule "F".

The Debtors are married and live together with their 15-year old daughter. The schedules reflect that Mr. Glanton is unemployed and receiving unemployment compensation of approximately $1,200.33 per month. Mrs. Glanton works as a financial analyst at ABB, Inc. earning approximately $3,237.96 per month of gross income. According to Official Form B22C ("Form B22C"), the Debtors have current monthly income ("CMI") of approximately $3,780.94 per month or $45,371.28 annually, which is less than the applicable median income for a household of three for the state of North Carolina. The Debtors do not include Mr. Glanton's unemployment income as part of

1

their CMI in Form B22C; however, they do list it on line #8 of Form B22C as a "benefit received under the Social Security Act." It is apparent from reading Form B22C that Mr. Glanton received unemployment benefits in the average amount of $1,200.33 per month for the six months prior to the Petition Date.

The Trustee objected to confirmation of the Debtors' plan pursuant to 11 U.S.C. §1325(b) and has argued that unemployment income is based upon lost wages and is payable pursuant to state law and, thus, is not a "benefit received under the Social Security Act" and must be included in the computation of CMI. The Debtors, through counsel, have responded by asserting that unemployment income is a benefit received under the Social Security Act and is properly excluded from the calculation of CMI.

This matter came before the Court on April 7, 2011, and was continued until June 16, 2011. The parties requested a briefing schedule, with the Trustee's brief due by May 31, 2011, and the Debtors' reply brief due by June 14, 2011. Upon information and belief, this is a case of first impression in this District.

## II. ISSUE PRESENTED

IS UNEMPLOYMENT INCOME RECEIVED BY THE DEBTOR PURSUANT TO STATE LAWS AND REGULATIONS A BENEFIT RECEIVED UNDER THE SOCIAL SECURITY ACT THAT EXCLUDES IT FROM THE DEFINITION OF CURRENT MONTHLY INCOME FOUND IN 11 U.S.C. §101 (10A)?

ANSWER: NO

## III. ANALYSIS OF THE ISSUE PRESENTED

<u>The Court must sustain the Trustee's objection to confirmation as CMI includes the unemployment income paid to the male Debtor in this case.</u>

The central issue in this case is whether unemployment income received during the six-month period prior to the Petition Date constitutes current monthly income ("CMI")

in Form B22C that must be used to determine a debtor's disposable income under 11 U.S.C. §1325(b). The Trustee contends that the Debtors must file an amended Form B22C which includes the male Debtor's unemployment income in the computation of CMI. The Debtors rely on the phrase "excludes benefits received under the Social Security Act" in 11 U.S.C. §101(10A) of the Bankruptcy Code to assert that their computation of CMI should exclude unemployment benefits.

Pursuant to §1325(b), upon objection by the Trustee, the Court may not confirm a Chapter 13 plan if the claims of unsecured creditors are not being paid in full, unless the plan proposes to commit all the Debtors' projected disposable income received in the applicable commitment period to pay unsecured creditors. The starting point for determining disposable income is CMI, which is defined in 11 U.S.C. §101(10A) as:

> "the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) …derived during the 6-month period ending on (i) the last day of the calendar month immediately preceding the date of the commencement of the case…but **excludes benefits received under the Social Security Act**, payments to victims of war crimes or crimes against humanity…and payments to victims of international terrorism or domestic terrorism…"(emphasis added). 11 U.S.C. §101(10A) (West Pub. 2010).

Of crucial importance in this case is the phrase "excludes benefits received under the Social Security Act." The Debtors contend that unemployment benefits are "benefits received under the Social Security Act" and are, therefore, not included in the calculation of CMI. This is a surprisingly difficult question; the courts that have addressed this issue are divided. The clear majority of courts have held that unemployment benefits are not benefits received under the Social Security Act and should be included in the calculation of CMI. In re Baden, 396 B.R. 617 (Bankr. M.D. Pa. 2008); In re Kucharz, 418 B.R. 635 (Bankr. C.D. Ill. 2009); In re Overby, 2010 WL 3834647 (Bankr. W.D. Mo. 2010);

In re Washington, 438 B.R. 348 (N.D. Ala. 2010); In re Winkles, 2010 WL 2680895 (Bankr. S.D. Ill. 2010); In re Nance, 2010 WL 2079653 (Bankr. S.D. Ind. 2010); In re Rose, 2010 WL 2600591 (Bankr. N.D. Ga. 2010). Only two decisions, both in a Chapter 7 context, have held that unemployment compensation is a benefit received under the Social Security Act and, therefore, excluded from the definition of CMI. In re Sorrell, 359 B.R. 167 (Bankr. S.D. Ohio 2007); In re Munger, 370 B.R. 21 (Bankr. D. Mass. 2007). The Trustee argues that the greater weight of case authority favors including unemployment income in the calculation of CMI.

In proceeding to interpret the language in a statute, such as 11 U.S.C. §101(10A), a court must use the statute's plain meaning if it is unambiguous on its face. BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587 (2004). However, when the provisions of a statute are ambiguous and subject to various meanings, as in this case, the court may look beyond the plain language to determine the intent of Congress in enacting the statute. Baden at 621 (citing National R. Passenger Corp. v. National Association of R. Passengers, 414 U.S. 453, 458, 94 S.Ct. 690 (1974). In Baden, the court observed that Congress had two primary concerns in enacting BAPCPA: (1) Protecting the Bankruptcy system from being abused by ensuring that those who could afford to pay their debts did pay, and (2) protecting education and retirement savings from being drained by creditors. See Baden 396 B.R. at 622; see also H.R. Rep. No. 109-31(I), at 2-3, 115 (2005), U.S. Code Cong. & Admin. News 2005, pp. 88, 89, 177-78; 151 Cong. Rec. S2470 (March 10, 2005).

The exclusion of unemployment compensation from the calculation of CMI satisfies both concerns. Baden at 622. The purpose of unemployment compensation is to provide

funds to temporarily replace lost wages so that the unemployed worker can subsist until new employment can be found. By allowing the unemployed debtor to retain excess funds while failing to pay their bills, the position espoused by the Debtors runs contrary to Congress' goal of preventing abuse by those who have the means to pay a portion of their bills. Additionally, excluding unemployment from CMI does not further the goal of protecting retirement savings. Id.

Furthermore, in determining whether unemployment benefits are "benefits received under the Social Security Act", it is important to examine some of the history surrounding unemployment insurance programs. The Social Security Act of 1935 ("SSA") provided the states with financial incentives to adopt laws to pay involuntarily unemployed citizens. In re Kucharz, 418 B.R. 635, 637 (Bankr. C.D. Ill. 2009). Congress rejected the alternative of a uniform national unemployment insurance system, instead preferring to preserve the autonomy of the states to adopt their own systems. N.Y. Telephone Co. v. N.Y. State Dept. of Labor, 440 U.S. 519, 541 n. 36 (1979). As a result, unemployment claims are submitted to, evaluated and paid or denied by state officials implementing state law. Kucharz at 639.

This is true concerning the male Debtor in this case. His unemployment benefits are administered under the laws of North Carolina, in particular Chapter 96 of the North Carolina General Statutes. The North Carolina General Assembly created the Employment Security Commission of North Carolina to oversee the unemployment system. See N.C.G.S. §96-3. Employers are required to make contributions into a fund, the Unemployment Insurance Fund, from which benefits can be paid to unemployed workers. See N.C.G.S. §96-9. Conditions for benefit eligibility are determined under

5

state law.  See N.C.G.S. §96-13.  Accordingly, unemployment benefits are paid to Mr. Glanton as determined under North Carolina law and any regulations promulgated thereunder, independent of the SSA.

In fairness to the Debtors' position, it is undeniably true that, although unemployment benefits are paid through state-sponsored programs, unemployment insurance does have roots in the SSA and other federal legislation.  Kucharz at 637.  For example, the Federal Unemployment Tax Act ("FUTA"), 26 U.S.C. §§3301-3311, provided a tax credit for contributions an employer paid to a state fund established under a federally approved state unemployment compensation law.  Kucharz at 638.  A state's expenses for operating its unemployment insurance system are also paid for through federal grants if the state system meets certain federal requirements.  42 U.S.C. §1101(c)(1)(A).  By providing for federal financing of certified state unemployment insurance programs, the SSA was intended to induce the states to adopt programs that would achieve the objectives set forth under federal law.  Jenkins v. Bowling, 691 F.2d 1225, 1229 (7th Cir. 1982).

However, for a benefit to be "received under" the SSA, it is not sufficient that the benefit be merely "related to" or "envisioned by" or "induced by" the SSA.  Kucharz at 641.  Most courts that have examined the text of the phrase "benefits received under the SSA" have concluded that it means Social Security benefits, which has a common understanding that does not include unemployment benefits.  In re Washington, 438 B.R. 348, 351 (N.D. Ala. 2010); see In re Rose, 2010 WL 2600591 (Bankr. N.D. Ga. 2010) (stating that the determinative factor for this Court is the Court's view that Congress most likely used the term, "benefits received under the Social Security Act," in the same way

that people ordinarily think of Social Security benefits…as referring to retirement, disability, and other payments that come through…the Social Security Administration and that is called "Social Security"). Indeed, Congress appears to draw a distinction between unemployment benefits and social security benefits in other parts of the Bankruptcy Code. See 11 U.S.C. §522(d)(10)(A); see also In re Baden, 396 B.R. 617, 621 (M.D. Pa. 2008) (stating that Congress' intent was that the Bankruptcy Code treat the current and temporary replacement of wages administered by the state differently than future benefits associated with old age, ordinarily administered by the federal government). As stated by Judge Perkins in Kucharz:

> "The theory behind CMI is premised upon the assumption that their (debtors') recent earnings history is a valid predictor of how much debtors are likely to earn in the future. Since unemployment benefits replace lost wages, including those benefits in the CMI calculation is consistent with the predictive purpose of the provision…In this regard, unemployment compensation is unlike old age, survivors and disability benefits received under the SSA…None of those excluded benefits is a temporary substitute for lost wages." Kucharz at 642.

As a final point, an interpretation which excludes unemployment compensation from the definition of CMI would be inconsistent with a recognized principle of statutory construction, namely, that a court should not assume Congress, in enacting a statute, intended a deviation from established applications of judicial interpretation unless the statute itself effects such a change with specificity. Baden at 623 (citing Midlantic Nat. Bank v. New Jersey Dept. of Environmental Protection, 474 U.S. 494, 501, 106 S.Ct. 755, 759 (1986)). It is widely accepted that the pre-BAPCPA definition of disposable income included unemployment income. In re Hickman, 104 B.R. 374, 377 (Bankr. D. Colo. 1989); In re Compton, 88 B.R. 166, 167 (Bankr. S.D. Ohio 1988); In re Overstreet, 23 B.R. 712, 713-14 (Bankr. W.D. La. 1982). Had Congress intended CMI to exclude

unemployment compensation, it would have said so with greater clarity.  In re Overby, 2010 WL 3834647 (Bankr. W.D. Mo. 2010, p. 4); Baden at 623.

For all of the reasons stated above, the undersigned respectfully requests that the Trustee's Objection be sustained, and that confirmation of the Debtors' plan be denied.

This the 27th day of May, 2011.

                                             s/Benjamin E. Lovell
                                             Benjamin E. Lovell
                                             Attorney for the Trustee
                                             P.O. Box 3613
                                             Durham, N.C. 27703
                                             State Bar No. 23266
                                             Telephone No.  (919) 688-8065

PARTIES IN INTEREST
Page 1 of 1
B-1082315 C-13D

Richard M. Hutson, II
Standing Trustee
Post Office Box 3613
Durham, NC 27702-3613

Ed Boltz, Esq.
Law Offices of John T. Orcutt
6616-203 Six Forks Road
Raleigh, NC 27615

Michael D. West, Esq.
US Bankruptcy Administrator
PO Box 1828
Greensboro, NC  27402