UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

IN RE:                              )
                                    )
Willis A. Glanton and               )
Kathy H. Glanton,                   )    Case No. 10-82315C-13D
                                    )
        Debtors.                    )
                                    )

## MEMORANDUM OPINION

This case came before the court on June 16, 2011 for hearing on the Trustee's Objection to Confirmation of Plan. Koury L. Hicks appeared on behalf of the Debtors, and Benjamin E. Lovell appeared on behalf of the Chapter 13 Trustee, Richard M. Hutson II. Having considered the proposed plan, the objection filed by the Trustee, the briefs and arguments presented by counsel and the matters of record in this case, the court makes the following findings and conclusions.

## FACTS

The Debtors filed a voluntary petition for relief under chapter 13 of the bankruptcy code on December 29, 2010. As required by Bankruptcy Rule 1007(b)(6), the debtors filed with their petition official form B22C. Therein, they calculated their current monthly income at $3,780.94, based on the six-month average of Mrs. Glanton's wages and child support she received. On Line 8 of that form, they disclosed $1,200.33 as a six-month average in unemployment compensation for Mr. Glanton, but excluded it from the calculation of current monthly income, asserting it to be a benefit

under the Social Security Act. As their annualized current monthly income was less than the median family income of a household of three in North Carolina, the Debtors proposed a plan with a 36-month commitment period under section 1325(b)(4) and without applying section 1325(b)(3) for determining reasonable expenses.

The Trustee objects to the exclusion of the unemployment compensation from the calculation of the Debtors' current monthly income. The Trustee asserts that as a result of this exclusion, the debtors' plan fails to comply with the disposable income and applicable commitment period requirements of section 1325(b). The Debtors maintain that their exclusion of unemployment compensation was proper. There are no material facts in dispute between the parties, leaving only the legal question of whether unemployment compensation proceeds are "benefits received under the Social Security Act" properly excluded from current monthly income.

ANALYSIS

Current monthly income is defined under section 101(10A)(A) of the bankruptcy code as a six-month average of "monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income." However, under section 101(10A)(B), current monthly income "excludes benefits received under the Social Security Act." Whether this definition serves to exclude unemployment compensation benefits from current monthly income

depends on whether such compensation is properly considered "received under" the Social Security Act, 42 U.S.C. §§ 301-1397mm. What would appear at first to be a straightforward inquiry is more complicated due to the federal-state cooperative nature of the employment compensation system.

This question has been considered by a number of courts. Most have concluded that unemployment compensation is not a benefit received under the Social Security Act. In re Washington, 438 B.R. 348 (N.D. Ala. 2010); In re Kucharz, 418 B.R. 635 (Bankr. C.D. Ill. 2009); In re Baden, 396 B.R. 617 (Bankr. M.D. Pa. 2008); see also In re Overby, No. 10-20602, 2010 WL 3834647 (Bankr. W.D. Mo. Sept. 24, 2010); In re Winkles, No. 10-30137, 2010 WL 2680895 (Bankr. S.D. Ill. Jul. 6, 2010); In re Nance, No. 09-05604, 2010 WL 2079653 (Bankr. S.D. Ind. May 21, 2010) (agreeing with Kucharz); In re Rose, No. 09-70088, 2010 WL 2600591 (Bankr. N.D. Ga. May 12, 2010) (agreeing with Kucharz and Baden). Two other courts, in earlier decisions, held otherwise and found that unemployment compensation was a benefit received under the Social Security Act. In re Munger, 370 B.R. 21 (Bankr. D. Mass. 2007); In re Sorrell, 359 B.R. 167 (Bankr. S.D. Ohio 2007). These nine courts approach the question with two intersecting analytical approaches. In the first, the focus is whether in light of the nature of the unemployment compensation system, its benefits are properly characterized as Social Security Act benefits. See, e.g., Washington, 438 B.R. at

351-53 (federal-state cooperative system does not pay SSA benefits); Kurcharz, 418 B.R. at 641. But see Sorrell, 359 B.R. at 181-82 (unemployment compensation is an indirect SSA benefit). In the second, the focus instead is on whether it is correct to interpret the BAPCPA-added section 101(10A)(B) language broadly so that it would encompass unemployment compensation and exclude such from current monthly income. See e.g., Kucharz, 418 B.R. at 641-43; Baden, 396 B.R. at 622-23 (language and intent support inclusion within CMI). But see Sorrell, 359 B.R. at 182-83 (comparison of BAPCPA provisions supports exclusion from CMI). The court agrees with the majority decisions, including Baden, Kucharz, and Washington, and finds that both approaches contained therein support the conclusion that unemployment compensation is to be included within current monthly income, as further explained below.

The court in Kucharz ably reviewed the history and structure of the unemployment compensation system, and such detail need not be repeated here. 418 B.R. at 637-40. As part of the Social Security Act of 1935, Congress created incentives for the individual states to create unemployment compensation systems. The Federal Unemployment Tax Act (FUTA), formerly Title IX of the Social Security Act, now codified in the Internal Revenue Code at 26 U.S.C. §§ 3301-3311, imposes an excise tax on wages paid by employers, but allows a credit of up to 90% of the tax for the employer's contributions to a state's unemployment compensation

- 4 -

fund. Furthermore, Title III of the Social Security Act, 42 U.S.C. §§ 501-504, provides federal funds to cover the administrative expenses of state unemployment compensation systems. As with each of the other states, North Carolina enacted a unemployment compensation law. North Carolina's Employment Security Law expressly recognizes that its purpose is to secure the benefits of these federal incentives under the FUTA[1] and Title III of the Social Security Act. N.C. Gen. Stat. § 96-19(a) (2009).

Consideration of the nature of this system leads to the conclusion that unemployment compensation is not a benefit received under the Social Security Act. State officials receive and evaluate unemployment claims, and based on the laws and regulations of that state, pay approved claims as a state agency. See Kucharz, 418 B.R. at 639. Early challenges to the constitutionality of the unemployment system as invading state sovereignty were rejected by the Supreme Court, holding that states maintained control of their unemployment compensation systems. Id. at 639-640 (summarizing holdings of Charles C. Steward Mach. Co. v. Davis, 301 U.S. 548 (1937) and Carmichael v. Southern Coal & Coke Co., 301 U.S. 495 (1937)). The Supreme Court continues to refer to unemployment compensation programs as "federal-state cooperative" programs.

---

[1] The North Carolina statute still references the FUTA by its name at original enactment, Title IX of the Social Security Act, despite the relocation of FUTA in 1939. See Kucharz, 418 B.R. at 638 n.1 (movement of FUTA to IRC).

- 5 -

Washington, 438 B.R. at 353 (citing Califano v. Boles, 443 U.S. 282, 285 n.2 (1979) and California Dep't of Human Res. Dev. v. Java, 402 U.S. 121, 125 (1971)). While it can be justly said that unemployment compensation is related to the Social Security Act, the extensive involvement of the state in the actual provision of financial benefits to the claimant makes it incorrect to state those benefits are received under the Act. See Kucharz, 418 B.R. at 641 ("It is not sufficient that the benefits are merely 'related to' or 'envisioned by' or 'induced by' the SSA. More is required. They must have been received under the SSA.").

Further support of this conclusion has been found by interpreting the ambiguity within the section 101(10A)(B) definition in light of the purpose and context of BAPCPA. Prior to the adoption of BAPCPA, it was an established judicial practice to include unemployment compensation when evaluating a debtor's ability to repay creditors. Baden, 396 B.R. at 623. A traditional rule of construction is that statutes should be read to deviate from prior practice only when done so with specificity. Id. Furthermore, "[t]he exclusion of unemployment compensation from the calculation of CMI is incongruous" with the goals of preventing abuse of bankruptcy by those with ability to pay and protecting education and retirement savings from creditors. Id. at 622. Current monthly income serves a predictive purpose, and including temporary unemployment compensation serves to enhance the

prediction. Kucharz, 418 B.R. at 642. Accordingly, the court finds no reason amongst the purpose and context of BAPCPA to deviate from a literal reading of the statute, a literal reading of "benefits received under" that makes it difficult to conclude benefits received from the State of North Carolina, pursuant the laws of that state and by and through the acts of its state officials, are instead properly characterized as benefits received under a federal law, the Social Security Act.

Before concluding, the court will address a novel argument raised by the Debtors. Title XII of the Social Security Act, in 42 U.S.C. § 1321, provides for federal loans to a state's unemployment compensation system when the state has depleted its trust account and requires additional funds to pay benefits. At present, and during all periods relevant to calculation of current monthly income in this case, the North Carolina unemployment insurance fund has been insolvent, and has drawn Title XII advances in order to be able to meet all benefit payment obligations. From these facts, the Debtors argue that their case is distinguishable from those cited above, as their benefits are comprised of funds provisioned under the Social Security Act. The court finds this argument unavailing.

First off, North Carolina's Employment Security Law treats all sources of funding to the Unemployment Insurance Fund as "commingled and undivided." N.C. Gen. Stat. § 96-6 (2009). This

includes sources payable to North Carolina under the Social Security Act, such as Title XII advances, as well as non-Social Security Act payments under the Federal-State Extended Unemployment Compensation Act of 1970, Pub. L. No. 91-373, 84 Stat. 708, and state tax collections. It becomes a factual accounting exercise to determine if any particular benefit dollar can be traced to its source with particularity. Regardless, the fact that the state gains possession of the funds before disbursement to the individual claimant strips them of any character as Social Security Act funds. The Debtors would equate borrowing following Unemployment Insurance Fund insolvency with federalization of unemployment benefits. Such is an inaccurate characterization. States have multiple options to address such insolvency, including borrowing from other sources, increasing taxes, and reducing benefits. In all cases, the state retains control over its program. That the State of North Carolina chose to borrow from the federal government under a privilege granted to it by the Social Security Act does not transform benefit payments made by that state into "benefits received under the Social Security Act."

The court would also note that it is difficult to assert any policy justification for why an individual debtor's ability to repay his or her creditors is related to whether or not the debtor's state of residence elected to borrow that debtor's particular benefit dollars under the Social Security Act. While

legislation can certainly have unexpected results, when the court is called on to interpret an ambiguously worded statute, as is the case here, the better interpretation is that which avoids absurd or unexpected results.

Accordingly, the Trustee's objection to confirmation is sustained and confirmation of the Debtors' plan is denied. The Debtors shall have 30 days from June 16, 2011 to amend their proposed plan. An order so providing was entered by the court on June 24, 2011.

This 7th day of July, 2011.

WILLIAM L. STOCKS
United States Bankruptcy Judge

# PARTIES TO BE SERVE

Willis Andre Glanton
611 Beaver Dam Run
Durham, NC 27703


Kathy Harris Glanton
611 Beaver Dam Run
Durham, NC 27703


John T. Orcutt
6616-203 Six Forks Rd.
Raleigh, NC 27615


Richard M. Hutson, II
Chapter 13 Office
302 East Pettigrew St., Suite B-140
P. O. Box 3613
Durham, NC 27702

Koury L. Hicks, Attorney
The Law Offices of John T. Orcutt
6616-203 Six Forks Road
Raleigh NC 27615